Núm. 6959.—PUEBLO, apldo. *v.* APONTE, (a) CHATO, aplte.—C. D. Humacao. ▮▮▮▮▮▮ Diciembre 9, 1938.

(Por la Corte, a propuesta del Juez Asociado Sr. Hutchison.)

POR CUANTO, los únicos supuestos errores señalados por el apelante son:

"*Primer Error.*—Haber declarado sin lugar la moción de nuevo juicio presentada por el acusado.

"*Segundo Error.*—Haber declarado el Jurado de la Corte de Distrito de Humacao culpable al acusado de un delito de mutilación.

"*Tercer Error.*—No haber declarado que el acusado estuvo justificado al actuar como lo hizo, en su defensa propia.

"*Cuarto Error.*—Haber admitido la Corte de Distrito de Humacao, como prueba, los expedientes criminales 12303 y 12803, por infracciones a los Artículos 137 y 84, respectivamente, del Código Penal.

"*Quinto Error.*—Haber instruído a los Sres. del Jurado, el Juez de la Corte de Distrito de Humacao, en la forma que lo hizo con respecto a los citados expedientes admitidos como prueba."

POR CUANTO, el segundo y tercero de estos supuestos errores se contraen a un conflicto en la prueba resuelto en contra del acusado por el jurado, sin que exista error tan manifiesto en la apreciación de la prueba que exija una revocación de la sentencia apelada;

POR CUANTO, no encontramos error alguno por haberse admitido los expedientes criminales mencionados en el cuarto señalamiento para demostrar el móvil del delito imputado al acusado ni en las instrucciones dadas por el Juez de Distrito al jurado sobre los expedientes así admitidos;

POR CUANTO, la moción sobre nuevo juicio se funda en las siguientes razones:

"(a) Porque el veredicto es contrario a derecho y a la prueba, y al cual veredicto fué inducido el jurado por un miembro del mismo que era miembro de la Policía Insular, y era un policía allí y entonces pensionado y fué nombrado Presidente del Jurado, y llamado José Reyes Reyes, siendo dicho veredicto por tal razón apasionado y el jurado no tuvo en cuenta la prueba presentada por el acusado;

"(b) Porque la Corte instruyó erróneamente al jurado al recibir dos expedientes criminales contra el acusado como evidencia, lo cual influyó decisivamente también e indujo a error al jurado en este caso;

"(c) Porque así mismo influenció en la decisión del jurado las preguntas improcedentes y contrarias a derecho hechas por el Fiscal, tendiendo a influenciar, como influenció en el jurado, en el sentido de que el acusado fuera un elemento díscolo y violento;

"(d) Porque el acusado ha descubierto nueva prueba en su favor, como lo es un dependiente de la casa Garzot & Cía., de Humacao, y otro testigo de la Playa de Fajardo, que declararán que dicho policía corrió y persiguió al

compareciente revólver en mano, a pesar de las súplicas del acusado de que no le disparara, viéndose obligado por ello el acusado a disparar su revólver contra dicho policía.''

Por CUANTO, en la vista de la moción sobre nuevo juicio ocurrió lo siguiente:

"El día 14 de octubre de 1937, señalado para la vista de la moción sobre nuevo juicio interpuesta en este caso por el acusado comparecieron el Pueblo de Puerto Rico por su fiscal Hon. García González y el acusado representado por el Lcdo. Juan Valldejuli Rodríguez.

"Defensor.—En ese caso Sr. Juez hemos pedido la citación del Juez Municipal de Fajardo y del Sr. Reyes que fué presidente del Jurado.

"Juez.—Hay un telegrama que ha sido recibido por el Juez, del juez municipal informando que tiene sesión señalada para el día de hoy y que en esas circunstancias lo es imposible comparecer.

"Defensor.—Ese es un testigo imprescindible Sr. Juez, para nosotros. Vamos a demostrar con él que en más de tres ocasiones, a petición del acusado, el Juez llamó al policía Ortiz, en presencia también de este acusado para advertirle que cesara en las persecuciones de dicho policía contra este ciudadano; y que en presencia del propio juez se mostró hostil y agresivo contra el acusado, el Sr. Ortiz. Eso lo declararía el Juez municipal, siendo a nuestro juicio, para los efectos de resolver la moción, una declaración esencial y una prueba que descubrimos posteriormente.

"Juez.—Entonces el Fiscal estaría dispuesto a admitir que si viniera aquí el señor Nevares declararía eso?

"Fiscal.—Estoy dispuesto a admitir que el Sr. Nevares de venir aquí declararía eso.

"Defensor.—Para aclarar la situación, la estipulación es la siguiente, que de comparecer aquí el Juez Municipal de Fajardo, Sr. Nevares Santiago declararía que antes de los sucesos, en varias, ocasiones, y a petición del acusado en este caso, Sr. Aponte y en su presencia, en la propia corte citó al policía Ortiz y en presencia del acusado le llamó la atención de las manifestaciones hostiles y de persecución que estaba realizando contra el Sr. Aponte.

"Fiscal.—A través de la información dádale a él por el acusado, pero en presencia de él.

"Defensor.—Sí, del acusado, y que en presencia del acusado lo amonestó que cesara esa persecución porque podría traer malas consecuencias, y en presencia del propio juez, y contra el acusado, el policía Ortiz se mostró hostil, en actitud de no obedecer, ni admitió para dejar dicha persecución, en virtud de las indicaciones de dicho Magistrado.

"Juez.—Desde luego, a reserva de la contestación del Fiscal en cuanto a la estipulación, la parte que ve la Corte es la siguiente. El testigo Nevárez estuvo aquí declarando.

"Defensor.—Estuvo declarando, pero hacemos constar que era testigo del pueblo.

"Juez.—Como quiera que fuera.

"Defensor.—Y que esa evidencia, o la realidad de esos hechos no habían llegado a noticias de este abogado.

"Juez.—Por eso, yo no he terminado, y estuvo aquí declarando y pudo haber sido utilizado como testigo entonces para la prueba de estos hechos por parte del acusado que los conocía. En segundo término, que no es posible admitir, S. S. lo sabe muy bien, en una moción de nuevo juicio, evidencia de esa naturaleza. Cuando la evidencia era conocida por el propio acusado, porque en su presencia fué que ocurrieron esos hechos, y lo que justificaría admitirla no era la negligencia, no era la ignorancia de esos hechos por el abogado, sino la ignorancia de los hechos por el acusado, que no los ignoraba. De manera que la prueba sería absolutamente irrelevante, impertinente, inadmisible, inmaterial para una moción de nuevo juicio, en un procedimiento de nuevo juicio. Y por otro lado no hay nada en las alegaciones de la moción que tienda a la admisión de esa prueba.

"Defensor.—Sr. Juez, nosotros solicitamos que se enmiende la moción, sin embargo en la moción habla de nueva prueba descubierta por este abogado, y si no aparece específicamente esa alegación, solicitamos que la moción sea enmendada en el sentido de que tales hechos fueron descubiertos con posterioridad al proceso.

"Juez.—¿Cómo pudieron haber sido descubiertos con posterioridad al proceso cuando el acusado los conocía?

"Defensor.—En cuanto al conocimiento que tenía este abogado que dirigía el proceso.

"Juez.—Está bien.

"Defensor.—Y que se enmiende la moción en el sentido de que el acusado por su condición de hombre del pueblo, ignorante y de no haber a su debido tiempo recordado estos hechos para informárselos a su abogado, este abogado que dirigía el proceso vino en conocimiento de esa evidencia con posterioridad a la terminación del proceso en este caso.

"Juez.—Con lugar la solicitud para enmendar en la forma en que ha sido expresada por el Letrado. ¿Hay alguna solicitud del Fiscal?

"Defensor.—A los efectos del récord en cuanto a la resolución del tribunal con respecto a la evidencia tomamos excepción.

"Juez.—Ha sido una expresión de criterio nada más.

"Defensor.—Está muy bien, Sr. Juez, entonces retirada.

"Fiscal.—El Fiscal va a hacer clara su posición en este caso como lo hace siempre, a los fines que persigue la defensa de producir el testimonio del Juez Municipal de Fajardo. El Fiscal acepta que de venir a declarar el Juez declararía eso.

"Juez.—Ya aparece eso.

"Fiscal.—Ya aparece eso. Ahora el Fiscal alega que es improcedente, inmaterial e impertinente esta declaración a los efectos de conseguir un nuevo juicio. Estos hechos que se quieren traer a conocimiento de la Corte a través del testimonio del Juez Municipal de Fajardo de haber existido estaban en el conocimiento personal y eran del dominio absoluto y exclusivo del acusado.

"Defensor.—El compañero está reproduciendo el criterio de la Corte.

"Fiscal.—Indudablemente, si es que no cabe otro criterio porque me baso en la ley, es la ley elemental.

"Juez.—Yo lo que creo es que el propio letrado pensara en la misma forma.

"Defensor.—Yo discrepo del criterio del tribunal.

"Juez.—S. S. no discrepa, S. S. lo que hace es alegar que S. S. no conocía esos hechos.

"Defensor.—Pero entiendo que en derecho todo es posible, porque uno especula bajo los mismos códigos y nadie ha dicho la última palabra, y el propio Supremo, como el Supremo de los E. U. hay veces que ha dicho que no en una cosa como definitivamente establecida y unos años. después ha dicho que sí.

"Fiscal.—Bueno, en cuestiones de nuevo juicio la regla es la existencia de una prueba la cual era ignorada y estaba fuera del dominio del acusado y que a pesar de haber hecho todas las diligencias necesarias para probar su defensa no pudo nunca descubrir esa prueba y que ha venido a descubrirla ahora con posterioridad al juicio cuando los hechos demuestran qúe de existir esa situación, existía y era del conocimiento del acusado.

"Juez.—¿Entonces S. S. solicita la eliminación de la declaración?

"Fiscal.—Indudablemente.

"Juez.—Una vez admitido que podría él declarar eso.

"Fiscal.—Sí, señor.

"Juez.—Con lugar.

"Defensor.—¿Con lugar qué?

"Juez.—El Fiscal ha admitido que si viniera el testigo declararía tal como S. S. propuso la estipulación. Es como si hubiera venido el señor Nevares y hubiera declarado eso; él solicita la eliminación de la declaración y la Corte declara con lugar la moción de eliminación.

"Defensor.—Entonces solicito que quede como evidencia presentada y no admitida por el Tribunal.

"Juez.—Sí, señor, queda a los efectos del récord, la eliminación material nunca se permite.

"Defensor.—A los efectos del Supremo si no se lleva en esa forma, es una cosa inexistente, el Supremo ha dicho que ahora debe solicitar que conste que se ofreció y no se admitió. Se lleva como evidencia no admitida.

"Juez.—El resto de la moción.

"Defensor.—El Presidente del jurado.

"Declaración Bajo Juramento de José Reyes Reyes.

"Defensor:

"P. ¿Su nombre es?

"R. José Reyes Reyes.

"Juez.—¿Se podría informar a la Corte sobre lo que va a declarar este testigo?

"Defensor.—Bueno, nosotros sabemos de que lo vamos a interrogar pero no sabemos lo que él contestará.

"Juez.—No me he sabido explicar entonces.

"Defensor.—Perdóneme el Tribunal.

"Juez.—¿Sobre qué extremos de la moción?

"Defensor.—El testigo fué el Presidente del jurado que intervino en este caso de este acusado y cuando se estaba preguntando en sentido general, cualificándole para jurado, en ningún momento contestó, por la información que nosotros tememos de su condición de policía insular pensionado, y si ese hecho lo hubiese él descubierto al preguntarle de su capacidad, actitud, temperamento, condiciones espirituales para juzgar este caso, lo hubiésemos rechazado porque pertenece, si es que es policía pensionado, a esa organización, y por el espíritu del cuerpo y de clase, no hay duda que le influenció, y estaba en una actitud

completamente hostil a este acusado, y no hubo un juicio imparcial y justo contra él. Y lo que queremos establecer en el récord es si en realidad es un policía pensionado, según nos ha sido informado.

"Fiscal.—Si el propósito de la evidencia es ése, nosotros vamos, desde luego, no habíamos hecho ninguna moción a la Corte hasta que en el interrogatorio fueran ocurriendo las preguntas, ir el Fiscal haciendo sus objeciones a la declaración del testigo, pero una vez esbozado en estos términos el propósito que persigue la defensa, el Fiscal se opone terminantemente a que el testigo declare sobre nada que se relacione con su actitud y conducta cuando formó parte del jurado que juzgó este caso: primero, porque es secreta la labor, la conducta del jurado en su deliberación cuando un caso le es sometido para su resolución; y, además, porque la parte tuvo oportunidad, o de buscar si era posible la recusación motivada de este jurado, y una vez aceptada su capacidad para actuar como tal jurado, tuvo la oportunidad de haberle recusado perentoriamente y no lo hizo, y si mal no recuerdo entre los primeros señores jurados que se sortearon y fueron juramentados estaba el Sr. Reyes, fué aceptado por la defensa, y no vemos en qué forma podría esto influir en la mente del juzgador para que basándose en una declaración como la que esboza la defensa fuese a conceder la gracia de un nuevo juicio.

"Defensor.—Sr. Juez, nosotros no queremos penetrar en la decantada y cacareada realidad de que las deliberaciones del jurado son sagradas. No queremos penetrar en eso. No nos gustan las cosas sagradas, ni queremos entrar en un lugar santo protegiendo y deseando todo lo sagrado, pero nosotros lo que queremos es establecer en el récord que este señor a pesar de ser policía pensionado perteneciente a la organización a que pertenecía y pertenece también Ortiz, que es un policía pensionado, mientras se estaba preguntando la actitud y condiciones para jurados, en ningún momento descorrió y descubrió esa condición y ese hecho lo ponemos en el récord a los efectos de lo que pueda juzgar el tribunal. No somos nosotros los que vamos a penetrar en las sagradas circunstancias de esas deliberaciones, no; es la Corte la que tiene que pesar si un policía que es el presunto perjudicado, y hay un acusado de haberlo agredido, si un jurado de policías sería bueno para juzgar a ése que dice que agredió o mutiló a un policía. Eso no es nada más que para el aspecto humano, y el aspecto legal que por ejemplo se asesine a un barbero de la localidad a ver si es bueno un jurado de barberos de la localidad para juzgar al acusado. De manera que no es nada más que establecer un hecho sin penetrar en lo que él hizo. Ya eso se deducirá, ya eso lo dirá la ley, y ya eso lo dirá el tribunal, la actitud del testigo en el jurado, juzgando a un hombre que agredió y mutiló a un policía. Eso es para el Tribunal y eso es para la moción de nuevo juicio.

"Juez.—Entonces examinado el artículo 303 del Código de Enjuiciamiento Criminal vigente, en su edición de 1935, y considerando el apartado A de la moción de nuevo juicio, se declara con lugar la oposición del Fiscal.

"Defensor.—Queremos establecer Sr. Juez en el récord, y pedimos la reconsideración, porque el Supremo ha dicho que ningún argumento con posterioridad a la resolución debe pedirse que se reconsidere a los efectos de establecer los fundamentos nuestros. Sr. Juez, tenemos llamado por el Tribunal al testigo José Reyes Reyes, que alegamos en nuestra moción es un policía pensionado. Está sentado en la silla de los testigos debidamente juramentado. Este testigo pertenece al cuerpo de la policía, no solamente formó parte del ju-

rado sino que fué nombrado Presidente del Jurado por este Hon. Tribunal. Sostenemos Sr. Juez que en ningún momento, en el examen que se le hizo manifestó que pertenecía al cuerpo de la policía insular, y sostenemos que se guardó eso con el propósito de influenciar en el jurado y hacer que se trajera el veredicto que se trajo de culpabilidad contra este acusado Aponte a pesar que la evidencia de la defensa es superior y no fué controvertida, en relación a la evidencia del Pueblo de Puerto Rico, y solicitamos que se nos permita interrogar a este testigo para demostrar tales extremos.

"Juez.—La Corte ha basado su negativa en la consideración que ha dado al apartado A de la moción de nuevo juicio y en lo que prescribe el artículo 303 del Código de Enjuiciamiento Criminal, sobre los nuevos juicios, y además en las primeras manifestaciones del letrado, que concuerdan fundamentalmente con las últimas, porque entiende la Corte que no es procedente, ni es suficiente lo que el letrado dice enmendando o adicionando su moción con lo que acaba de decir, si eso es posible, porque ello convierte la declaración de este testigo en inadmisible en este procedimiento.

"Defensor.—Queremos llamar la atención al Tribunal que basamos nuestra moción en que el veredicto es contrario a la ley y a la prueba, y entendemos que un jurado que pertenece a la misma clase de la que se dice el perjudicado, esa condición de policía es un aspecto ilegal de este procedimiento y a los efectos del récord tomamos excepción de la resolución del tribunal. Ahora señor Juez solicitamos que se cite al joven Nicolás García que está en la Mercantil Buxó Hnos. me parece.

"Juez.—¿Con relación a qué apartado?

"Defensor.—Va a declarar que estando en el día de autos y en la obra en que se dice ocurrieron los hechos vió cuando el policía Ortiz innecesariamente persiguió a este hombre que iba en marcha contraria, lo registró, y entonces cuando se iba le echó mano al revólver para disparar y este hombre corrió y se parapetó detrás del poste de la luz que había en la calle, vió cuando después de haberle disparado dos veces en que mascaron las balas y no salieron, cuando se le fué para encima con el gatillo montado, entonces fué que este hombre en defensa propia hizo su disparo que cogió al policía.

"Juez.—Tratándose de evidencia meramente acumulativa a la presentada por el acusado, sería justo y lógico, primero, antes de citar a este testigo y de oírle, ver las diligencias hechas por el acusado para conseguir esa prueba, sin posibilidad de encontrarla.

"Defensor.—Hacemos constar al Tribunal, y si el Tribunal lo desea lo haré constar bajo juramento que estando almorzando el día del proceso llegó la noticia de que ese testigo había observado y visto todos los hechos, y ese día él no pudo ser encontrado para ser citado ante el Tribunal, y estaba ya en una etapa el procedimiento que no se podía aguardar más, y después del proceso entonces este abogado habló con ese testigo, y efectivamente le declaró todo lo que había visto.

"Juez.—La interrogación de la Corte es la siguiente: ¿si el acusado declaró, y declararon sus testigos en esa misma forma, en qué puede influir para un nuevo juicio una evidencia meramente acumulativa?

"Defensor.—Nosotros entendemos que eso sería para considerarlo el jurado y que es posible que el jurado por una abrumadora preponderancia de pruebas la tuviera en consideración y toda vez que los señores del jurado son los únicos jueces de la prueba, no sabemos Sr. Juez ni podemos penetrar en el ambiente

esotérico de lo que ellos habían de pensar y juzgar con respecto a esa evidencia. De.,manera que nosotros sostenemos que el Tribunal a los efectos de nuevo juicio no podría calificar ni cualificar la evidencia con el epigrama de que fuera acumulativa porque los únicos jueces de la prueba en estos casos, en juicios por jurado, es exclusivamente el jurado, y no sabríamos la forma en que ellos habían de conducir estos hechos proyectados de la evidencia en la silla testifical y oída por los Sres. jurados.

"Fiscal.—A pesar de que el Juez en cualquier momento de un juicio cuando se está produciendo evidencia de carácter acumulativo, como un caso que está viendo el juez puede en su discreción y en el cumplimiento de sus deberes al conducir el juicio suspender toda aquella evidencia que sea de carácter acumulativo.

"Defensor.—Sostenemos que esa facultad la tiene el Tribunal solamente en juicios por tribunales de derecho pero nunca en tribunales de hecho.

"Juez.—El principio que rige en estos procedimientos, invariable, necesariamente, sin el cual se destruiría y caería por su base la estructura del derecho procesal penal, es el de que para que la evidencia nuevamente descubierta sea suficiente para determinar la reapertura de un caso y un nuevo trámite de juicio, esa evidencia no debe ser meramente corroborante o acumulativa; debe ser una evidencia absolutamente nueva, que no venga a versar sobre los mismos hechos sobre los cuales otros testigos han declarado en idéntica forma. Ese es el principio general, que es invariable, tanto en juicios por jurado como en juicios ante los tribunales de derecho. La Corte cree que es sano, que de no sostenerse esa doctrina, de no tener fuerza esa doctrina, de restársele vigor, sería un entorpecimiento para la terminación definitiva de las acciones penales y sería ello por consiguiente grandemente lesivo al orden social.

"Defensor.—¿Qué resuelve entonces el tribunal?

"Juez.—Resuelve no admitir la declaración.

"Defensor.—Tomamos excepción, Sr. Juez. Y en cuanto a las instrucciones, en cuanto a la admisión de los expedientes penales, nosotros entendemos que el Tribunal cometió un error que perjudicó al acusado y que llevó influencias nocivas para el acusado al ánimo de los Sres jurados. Esos expedientes eran francamente inadmisibles. No bastó tampoco la instrucción de la Corte, Sr. Juez, para aminorar todo el daño que la admisión de esos expedientes hicieron al acusado. El daño fué hecho y la explicación del tribunal no fué para retirarlos sino para admitirlos y explicó en qué sentido se admitían. Nosotros sostenemos que esos expedientes eran francamente inadmisibles y que ninguna instrucción por evangélica y cristiana que fuera podía curar el daño realizado por esos expedientes. Sostenemos además, como cuestión de derecho, que las preguntas del Fiscal con respecto al temperamento ha proyectado en la conciencia del jurado, digo, con respecto a proyectar en la conciencia del jurado que el acusado era de un temperamento violento ha lesionado también profundamente los derechos del acusado y violado esas preguntas, a pesar de ser resueltas como inadmisibles por la Corte, violaron la doctrina del Tribunal Supremo de P. R. establecida en el caso del *Pueblo* v. *Valle*, 29 D.P.R. 555, en que se le impone el deber al Fiscal de conducir sus casos estrictamente de acuerdo con la ley, y no hacer ninguna pregunta que sabiendo que es inadmisible trae perjuicios para los acusados. Por esa misma actitud del Fiscal en el caso del *Pueblo* v. *Valle*, de hacer preguntas irrelevantes aunque eran desechadas por la Corte en su mayor parte, por ese mismo motivo se revocó la sentencia de presidio dictada contra

Manuel Valle por un supuesto delito de escalamiento en primer grado. Sostenemos Sr. Juez que por esos motivos la Corte debe conceder un nuevo juicio a este acusado, por las manifestaciones últimamente indicadas, y además porque no creemos en la justicia del veredicto dado por un jurado cuyo presidente pertenece al mismo cuerpo del presunto policía perjudicado.

"Juez.—Entonces el Fiscal va a contestar.

"Fiscal.—Una parte de la argumentación está consignada por escrito.

"Juez.—Entonces se resolverá. Al resolverse, si acaso fuese adversa la resolución en el procedimiento se fijará la fecha para la sentencia."

POR CUANTO, tampoco encontramos error alguno en la resolucón de la Corte de Distrito denegando la moción sobre nuevo juicio:

POR TANTO, se confirma la sentencia apelada que dictó la Corte de Distrito de Humacao en octubre 22, 1937.

El Juez Presidente Sr. del Toro no intervino.